# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARL LANE, | ) |
| | ) Civil Action No. 11 - 893 |
| Plaintiff, | ) |
| | ) District Judge Donette W. Ambrose |
| v. | ) Chief Magistrate Judge Lisa Pupo Lenihan |
| | ) |
| RICHELLE L. ZIRKLE, RHONDA | ) |
| HOUSE, and C/O WORSTELL, | ) ECF No. 32 |
| | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that Defendants' Motion for Summary Judgment (ECF No. 32) be granted on the ground that Plaintiff has failed to exhaust his administrative remedies with respect to each of his claims. Alternatively, Defendants' Motion should be granted on Plaintiff's retaliation claim to the extent Plaintiff exhausted his administrative remedies with respect to such claim.

### II. REPORT

Carl Lane ("Plaintiff") is a state inmate who was confined in the State Correctional Institution at Fayette ("SCI-Fayette") during the relevant times the alleged violations in this action occurred. He initiated this action on October 12, 2011, pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983. In his Amended Complaint filed on January 11, 2012, he alleges that Defendants, three employees of SCI-Fayette, violated his federal constitutional rights by

1

retaliating against him in connection with a property search and confiscation of UCC related material from his cell on February 23, 2010. (ECF No. 24.) Defendants have filed a Motion for Summary Judgment (ECF No. 32) with a supporting Appendix (ECF No. 35), along with a Brief in Support thereof (ECF No. 33) and a Concise Statement of Material Facts (ECF No. 34). Although Plaintiff was given an opportunity to respond to Defendants' motion and was granted an extension of time to do so, he did not file a response in opposition. As such, Defendants' motion is now ripe for review and should be granted for the reasons stated herein.

## I. Plaintiff's Allegations and Material Facts[1]

Plaintiff alleges that on November 13, 2009, he purchased from BBPD Book Publications the book "Uniform Commercial Code in a Nutshell" to help prepare him to litigate a civil action he would later file against Citizens Bank on December 21, 2009. (Plaintiff's Complaint, ECF No. 24 at ¶¶ 13-14.) The book arrived at SCI-Fayette and was forwarded to Plaintiff on January 18, 2010, allegedly after the Incoming Publications Review Committee ("IPRC") inspected and approved the publication pursuant to Pennsylvania Department of Corrections Policy DC-ADM 803 governing inmate mail and incoming publications. (Id. at ¶ 15.) Plaintiff states that he made a "dust jacket" or cover for the book so as to keep the book in good condition. (Id. at ¶ 17.)

Plaintiff submitted a grievance on February 18, 2010, in which he complained that on January 29, 2010, he had sent a 14-page document to the library for copying but had never

---

[1] Under the Local Rules of Court for the Western District of Pennsylvania, material facts set forth in a moving party's statement of facts will be deemed admitted for the purpose of deciding a motion for summary judgment "unless specifically denied or otherwise controverted by a separate concise statement of the opposing party." *See* L.R. 56.1(E). Courts in this district strictly apply Local Rule 56 and deem uncontroverted facts to be admitted. *See* Emigh v. Miller, No. 08-1726, 2010 U.S. Dist. LEXIS 74414, 2010 WL 2926213 (W.D. Pa. July 23, 2010) (collecting cases). Because Plaintiff filed to respond to the pending Motion for Summary Judgment or file a "counter" statement of material facts, Defendants' statement of facts as set forth in ECF No. 34 will be admitted as true and correct.

received the copies. (Defendants' Exh. 1, Plaintiff's Grievance #307549 and related responses at pp.1-2.)[2] Plaintiff complained that library assistant Brown had delivered books to the RHU on February 2, 2012, but did not have his original document or copies. (Exh. 1 at p.1.) The grievance was assigned to Defendant Richelle Zirkle, the Corrections Librarian, for review and response. (Exh. 1 at p.3.) According to Defendant Zirkle and her grievance response, she interviewed librarian assistants Brown and Cutler and learned that Brown had processed Plaintiff's copy request on January 30, 2010, and that Cutler had delivered the copies to Plaintiff on February 2, 2010, but forgot to get the receipt back from Plaintiff acknowledging delivery of copies. (Exh. 1 at p.3.; Defendants' Exh. 2, Declaration of Richelle Zirkle at ¶ 3.) Defendant Zirkle was able to review the security tape from February 2, 2010, and it confirmed Cutler's description of what happened. (Exh. 1 at p.3.; Exh. 2. at ¶ 4.) Cutler was seen delivering several envelopes to Plaintiff's cell, and specifically envelopes only used to delivery personal photocopies and legal photocopies. (Exh. 1 at p.3; Exh. 2 at ¶ 4.) Upon concluding that the materials delivered to Plaintiff by Cutler on February 2, 2010 were undoubtedly the same materials Plaintiff asserted he had never received, Defendant Zirkle denied Plaintiff's grievance. (Exh. 1. at p.3.)

Defendant Zirkle discussed Plaintiff's allegations and the security video with Defendant Rhonda House, the Superintendent's Assistant, who had assigned Plaintiff's Grievance to Defendant Zirkle. (Exh. 2 at ¶ 5; Defendants' Exh. 3, Declaration of Rhonda House at ¶ 3.) Based upon Cutler's description and the security video, which showed delivery of several envelopes, Defendants Zirkle and House believed Plaintiff was lying when he claimed Brown (Cutler) never returned his copies. (Exh. 2 at ¶ 5; Exh. 3 at ¶ 4.) They believed the library

---

[2] Defendants' Exhibits are docketed at ECF No. 35-1 and cited to herein by their Exhibit number.

receipt Cutler had forgotten to retrieve might still be in Plaintiff's cell and obtained permission from management to conduct a search of Plaintiff's property. (Exh. 2 at ¶ 5; Exh. 3 at ¶ 5.)

The search was conducted on February 23, 2010, in Plaintiff's presence and with his permission. (Exh. 2 at ¶ 6; Exh. 3 at ¶ 6; Defendants' Exh. 5, Declaration of Captain Walker at ¶¶ 2-4.) Plaintiff was moved into a strip cell and his property was brought out of his cell on a cart, in front of him. (Id.) Unit Manager Walker asked Plaintiff if there was any contraband in his property and Plaintiff responded no. (Id.) Plaintiff's property was then inspected by Defendants Zirkle and House while he watched. (Exh. 2 at ¶ 7; Exh. 3 at ¶ 7; Exh. 5 at ¶¶ 3, 5.) Defendants Zirkle and House specifically told Plaintiff that they were looking for the library receipt and/or freshly-made copies. (Exh. 2 at ¶ 6; Exh. 3 at ¶ 6.) During the course of the search, Defendant Zirkle recognized a book with a jacket cover similar to covers made for books in the library. (Exh. 2 at ¶ 7; Exh. 3 at ¶ 7.) As she thumbed through the book, she could see that the jacket was fake and did not match the book, Plaintiff's "Uniform Commercial Code in a Nutshell." (Id.) Defendant Zirkle knew that material related to UCC matters presented potential contraband and security issues. (Id.) She did not confiscate the book or order confiscation, but she flagged it for Unit Manager Walker to review. (Exh. 2 at ¶¶ 7-8; Exh. 3 at ¶¶ 7-8.) Walker looked at the book, and, given the questionable jacket cover and UCC content, turned it over to Defendant Officer Worstell in security. (Exh. 5 at ¶¶ 3-4.) Security reviewed the book and cover, and the next day, Defendant Worstell issued Plaintiff Misconduct B003986 for possession of contraband – a book with a false or modified cover. (Defendants' Exh. 6, Misconduct Report and Appeal at p. 1; Defendants' Exh. 7, Plaintiff's Interrogatories and Request for Production of Documents with attached response.)

4

Pursuant to Pennsylvania Department of Corrections Policy DC-ADM 815, § 3.C.1., inmate property that has been altered or modified is considered contraband.[3] According to Defendant House, it is her understanding that Security's concern was more with the alteration and camouflage of the book, rather than the fact that it dealt with UCC matters. (Exh. 3 at ¶ 8.) Defendants', however, maintain that the book was never reviewed or approved by the IPRC, and that mailroom staff who processed the book on January 18, 2010, mistakenly failed to notice the UCC nature of the book and send it to Security. (Exh. 2 at ¶ 10; Exh. 3 at ¶ 10.) Plaintiff was found guilty of possession of contraband and issued a sanction of 90 days disciplinary custody, which was subsequently reduced to 60 days on appeal. (Exh. 6 at pp. 2, 4.) Plaintiff was permitted to return the book to the publisher. (Defendants' Exh. 4, Plaintiff's Grievance #314238 and related responses.)

## II. Legal Standard

Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, the record indicates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element to that party's case and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The moving party bears the initial burden of identifying evidence or the lack thereof that demonstrates the absence of a genuine issue of material fact. National State Bank v. Federal Reserve Bank of New York, 979 F.2d 1579, 1582 (3d Cir. 1992). Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as

---

[3] http://www.cor.state.pa.us/portal/server.pt/community/doc_policies/20643

presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The inquiry, then, involves determining "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990) (quoting Anderson, 477 U.S. at 251-52). If a court, having reviewed the evidence with this standard in mind, concludes that "the evidence is merely colorable . . . or is not significantly probative," then summary judgment may be granted. Anderson, 477 U.S. at 249-50. Finally, while any evidence used to support a motion for summary judgment must be admissible, it is not necessary for it to be in admissible form. *See* Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324; J.F. Feeser, Inc., v. Serv-A-Portion, Inc., 909 F.2d 1524, 1542 (3d Cir. 1990).

### III. Discussion

Plaintiff asserts that Defendants Zirkle and House retaliated against him on February 23, 2010, by unnecessarily searching his cell, "ransacking his cell property," and confiscating his UCC book after he refused to withdraw his grievance when they threatened to issue a fabricated misconduct report against him if he did not did not do so. (ECF No. 24 at ¶¶ 20, 28-30.) He also asserts that they hindered his access to the courts by damaging, destroying, discarding, and/or confiscating his personal papers, photos, and legal materials.[4] (Id. at ¶ 21.) Finally, he claims that both Defendants failed to intervene to stop the retaliatory conduct of the other. (Id. at ¶ 35.)

---

[4] Although Plaintiff states that Defendants Zirkle and House destroyed and/or seized these items, the only item he actually identifies as being confiscated is the UCC book. (ECF No. 24 at ¶¶ 28-31.)

Plaintiff claims that possession of the UCC book was proper and asserts that Defendant Worstell retaliated against him by issuing the misconduct report for possession of contraband at the direction of Defendant Zirkle. (Id. at ¶ 39.) He next asserts that his due process rights were violated in connection with the misconduct report when Defendant Worstell delayed in issuing the report under the false pretenses of an investigation,[5] which Plaintiff contends did not take place, and when he was found guilty of the misconduct without an adequate explanation as to why the UCC book was considered contraband. (Id. at ¶¶ 40-41.) Finally, he advances an equal protection claim in that he was treated differently than other similarly situated inmates who allegedly possessed UCC related material in that he was not afforded an opportunity to explain his reasons for possessing the book and why it was covered prior to being charged with possession of contraband. (Id. at ¶¶ 42-44.)

### A. Plaintiff failed to exhaust his administrative remedies

Defendants first assert that Plaintiff has failed to exhaust his administrative remedies with respect to most, if not all, of his claims. In this regard, through the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), Congress amended 42 U.S.C. § 1997e(a) to prohibit prisoners from bringing an action with respect to prison conditions pursuant to 42 U.S.C. § 1983 or any other federal law, until such administrative remedies as are available are exhausted. Specifically, the act provides, in pertinent part, as follows:

> No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983), or any other Federal

---

[5] The misconduct was issued on February 24, 2010, just one day after the UCC book was found on February 23, 2010. (Exh. 6 at p. 1.) While DOC policy DC-ADM 801 § 1(B)(1)(c) states that misconduct reports should be written and submitted the same day a staff member observes the misconduct, the policy provides for delays in misconduct with justification noted on the report. The justification here – that the book was sent to Security for investigation – was noted on Plaintiff's misconduct report. (Exh. 6 at 1.)

> law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion is required under this provision regardless of the type of relief sought and the type of relief available through administrative procedures. *See* Booth v. Churner, 532 U.S. 731, 741 (2001). In addition, the exhaustion requirement applies to all claims relating to prison life which do not implicate the duration of the prisoner's sentence, including those that involve general circumstances as well as particular episodes. *See* Porter v. Nussle, 524 U.S. 516, 532 (2002). Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies prior to filing the action. *See* Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion").

The PLRA also mandates that inmates "properly" exhaust administrative remedies before filing suit in federal court. Woodford v. Ngo, 548 U.S. 81, 93 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjunctive system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91. Such requirements "eliminate unwarranted federal-court interference with the administration of prisons, and thus seek[] to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" Id. at 93 (quoting Porter, 534 U.S. at 525). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective . . . appeal." Id. at 83; *see also* Spruill v. Gillis, 372 F.3d 218, 228-29 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion). Courts have concluded that inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently

litigating claims in federal courts. *See*, *e.g.*, Booth v. Churner, 206 F.3d 289 (3d Cir. 2000); Bolla v. Strickland, 304 F. App'x 22 (3d Cir. 2008); Jetter v. Beard, 183 F. App'x 178 (3d Cir. 2006).

This broad rule favoring full exhaustion admits of one, narrowly defined exception. If the actions of prison officials directly caused the inmate's procedural default on a grievance, the inmate will not be held to strict compliance with this exhaustion requirement. *See* Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000) (Section 1997e(a) only requires that prisoners exhaust such administrative remedies "as are available"). However, case law recognizes a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." Davis v. Warman, 49 F. App'x 365, 368 (3d Cir. 2002). Thus, an inmate's failure to exhaust will only be excused "under certain limited circumstances," Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate can defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." Davis, 49 F. App'x at 368; *see also* Brown v. Croak, 312 F.3d 109, 110 (3d Cir. 2002) (assuming that prisoner with failure to protect claim is entitled to rely on instruction by prison officials to wait for outcome of internal security investigation before filing grievance); Camp, 219 F.3d at 281 (exhaustion requirement met where Office of Professional Responsibility fully examined merits of excessive force claim and correctional officers impeded filing of grievance).

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances, inmate requests to excuse a failure to exhaust are frequently rebuffed by the courts. Thus, an inmate cannot excuse a failure to timely comply with these grievance procedures by simply claiming that his efforts constituted "substantial

compliance" with this statutory exhaustion requirement. Harris, 149 F. App'x at 59. Nor can an inmate avoid this exhaustion requirement by merely alleging that the Department of Corrections policies were not clearly explained to him. Davis, 49 F. App'x at 368. Thus, an inmate's confusion regarding these grievances procedures does not, standing alone, excuse a failure to exhaust. Casey v. Smith, 71 F. App'x 916 (3d Cir. 2003). Moreover, an inmate cannot cite to alleged staff impediments to grieving a matter as grounds for excusing a failure to exhaust, if it also appears that the prisoner did not pursue a proper grievance once those impediments were removed. Oliver v. Moore, 145 F. App'x 731 (3d Cir. 2005) (failure to exhaust not excused if, after staff allegedly ceased efforts to impede grievance, prisoner failed to follow through on grievance).

Defendants argue that Plaintiff has failed to exhaust all of his claims with the possible exception of the retaliatory search claim against Defendants Zirkle and House. As noted in the Factual Background section, *supra*, Plaintiff filed Grievance #307549 on February 18, 2010, complaining that the library had failed to copy and return a document. (Exh. 1 at pp.1-2.) Plaintiff was seeking reimbursement of $43.91 for the document copy charge and for the original document typing fee he had paid to an outside printing service. Id. Because librarian assistant Cutler remembered delivering copies but forgot the get the receipt, and since the security video from February 2, 2010, showed Cutler handing envelopes to Plaintiff that appeared to contain copies, Defendant Zirkle believed Plaintiff was lying and still had the copy receipt in his cell. As such, she obtained permission to search his property, which she and Defendant House did on February 23, 2010. They could not, however, find the receipt. (Exh. 2 at ¶¶ 3-4.) Defendant Zirkle denied the grievance on March 2, 2010, based on the Cutler's statement and the security video footage. (Exh. 1 at p.3.)

Plaintiff never filed any grievance complaining about the February 23, 2012, search of his property. In his March 10, 2010 appeal of Grievance #307549 related to the copy delivery dispute (filed before the February 23, 2010 search), he did, however, complain that the purpose of the search "was clearly retaliation against [him] for filing the grievance by ransacking and trashing [his] cell property." (Exh. 1 at pp.4-5.) Superintendent Coleman briefly addressed the accusation in his response, noting:

> "Let me make this perfectly clear – Ms. Zirkle and Ms. House did not ransack your property. You were present as they touched each piece of your property and as they returned it to where they took it from."

(Exh. 1 at p.7.) Notwithstanding this complaint about the search of his cell property, Plaintiff never filed any grievance about the confiscation of his UCC book or subsequent misconduct proceedings. (Exh. 3 at ¶ 12.) He never complained that the confiscation of his book was retaliatory or impeded his access to the courts and he never complained that the issued misconduct violated his due process or equal protection rights. (Exh. 3 at ¶ 12.) Although Plaintiff did file a grievance on April 12, 2012, which concerned the book, the subject of the grievance was in regards to Plaintiff's opting to return the book to the publisher and questioning whether that had been done. (Exh. 4.) Plaintiff withdrew that grievance on April 15, 2010. (Exh. 4.)

Plaintiff claims that he had no adequate remedy for seeking return of his book because he could not grieve the confiscation due to the finding of guilt at his disciplinary hearing. (ECF No. 24 at ¶ 47.) Defendants are correct in that, even though confiscation of Plaintiff's UCC book was related to his misconduct, he was still required to grieve his claims regarding retaliation, denial of access to courts, due process and equal protection violations through the Inmate Grievance System in accordance with Pennsylvania DOC policy governing Inmate Grievances,

DC-ADM 804.[6]  *See* Spencer v. Zimmerman, 2008 WL 2994227, at *4 (M.D. Pa. July 31, 2008) (Court rejected inmate's argument that he was prohibited from grieving his retaliation claim based on false misconduct).  This, Plaintiff did not do.

To the extent Plaintiff implies that his claims were exhausted through the Pennsylvania DOC's policy governing Inmate Discipline Procedures, DC-ADM 801,[7] the undersigned finds that they were not.  Pursuant to DC-ADM 801, an inmate who has been found guilty of a misconduct charge may appeal the decision based on three bases: (1) the procedures employed were contrary to law, Department directives, or regulations; (2) the punishment is disproportionate to the offense; and/or (3) the findings of fact were insufficient to support the decision.  DC-ADM 801, § 5(A)(1)(a)-(c).  In his appeal from the misconduct issued by Defendant Worstell, the only grounds Plaintiff raised were his legal basis for possessing the book, which he assumed had been approved by IPRC; the legitimacy of his protective cover; and his claim that the sanction of 90 days was disproportionate to his conduct.  (Exh. 6 at p. 3.)  None of these grounds relate to Plaintiff's claims before the Court and were insufficient to place Defendants on notice that Plaintiff sought to hold them accountable for retaliation, denial of access to courts, or due process and equal protection violations.  *See* Fortune v. Bitner, 2006 WL 2796158, at *9 (M.D. Pa. Sept. 25, 2006) ("The PLRA exhaustion requirement is satisfied if the Plaintiff files a grievance and appeals the denial of the grievance to the highest level possible, giving the prison 'fair notice' of the claim and an opportunity to remedy it.  To provide fair notice of a claim, the plaintiff must allege specific acts of mistreatment or misconduct and identify the responsible party or parties.")  Accordingly, Plaintiff has failed to exhaust his

---

[6]    http://www.cor.state.pa.us/portal/server.pt/community/doc_policies/20643

[7]    http://www.cor.state.pa.us/portal/server.pt/community/doc_policies/20643

administrative remedies as to any of his claims. Nevertheless, to the extent Plaintiff's claim regarding retaliation solely in relation to Defendants **search** of his cell property on February 23, 2010, was arguably exhausted in accordance with DC-ADM 804 by his inclusion of the claim on appeal of Grievance #307549, the undersigned will address the claim in the alternative.[8] The undersigned specifically finds, however, that Plaintiff did not properly exhaust this claim because he did not grieve the issue through all three levels of the Pennsylvania DOC's established Inmate Grievance System, thereby failing to comply with the applicable procedural rules as required.[9] *See* Spruill, 372 F.3d at 232 (holding a prisoner whose "grievance went through all [three] stages and were denied" had property exhausted administrative remedies under DC-ADM 804).

**B. Alternatively, the record does not support Plaintiff's claim of retaliation in connection with the search of his cell property on February 23, 2010**

It is well settled that retaliation for the exercise of a constitutionally protected activity is itself a violation of rights secured by the Constitution, which is actionable under section 1983.

---

[8] Although Defendants address each of Plaintiff's claims on the merits in the alternative, the undersigned will address only Plaintiff's retaliation claim in connection with the search of his cell property because it is clear that the remaining claims are unexhausted.

[9] Within DC-ADM 804, the Inmate Grievance System Policy, the DOC established a three-step Inmate Grievance System to provide inmates with an avenue to seek review of problems that may arise during the course of confinement. Pursuant to DC-ADM 804, after an attempt to resolve any problems informally, an inmate may submit a written grievance to the facility's Grievance Coordinator for initial review. This must occur within fifteen working days after the events upon which the claims are based. Within fifteen working days of an adverse decision by the Grievance Coordinator, an inmate may then appeal to the Facility Manager of the institution. Within fifteen working days of an adverse decision by the Facility Manager, an inmate may file a final appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). An appeal to final review cannot be completed unless an inmate complies with all established procedures. An inmate must exhaust all three levels of review and comply with all procedural requirements of the grievance review process in order to fully exhaust an issue. *See* Booth v. Churner, 206 F.3d 289, 293 n.2 (3d Cir. 2000) (outlining Pennsylvania's grievance review process); Ingram v. SCI Camp Hill, No. 08-23, 2010 U.S. Dist. LEXIS 127124, at *21-25 (M.D. Pa. Dec. 1, 2010) (same).

The policy was last amended on December 1, 2010. The previous version of the policy, in effect at the time of the challenged conduct at issue, allowed only ten working days to appeal an adverse initial review decision to the facility manager.

Rauser v. Horn, 341 F.3d 330 (3d Cir. 2001); White v. Napoleon, 897 F.2d 103, 112 (3d Cir. 1990). However, merely alleging the fact of retaliation is insufficient; in order to prevail on a retaliation claim, a plaintiff must show three things: (1) that the conduct in which he engaged was constitutionally protected; (2) that he suffered "adverse action"[10] at the hands of prison officials; and (3) that his constitutionally protected conduct was a substantial motivating factor in the defendants' conduct.[11] Rauser, 241 F.3d at 333 (adopting Mount Healthy Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)). Once all three criteria are met, the burden then shifts to the defendants "to prove by a preponderance of the evidence that it would have taken the same disciplinary action even in the absence of the protected activity." Rauser, 241 F.3d at 333. This means that "prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Id. at 334 (incorporating Turner v. Safley, 482 U.S. 78, 89 (1987)).

Assuming Plaintiff engaged in a constitutionally protected activity,[12] that the search of his cell property was sufficiently serious enough to deter a prisoner of ordinary firmness from

---

[10] An adverse action is one "sufficient to deter a person of ordinary firmness from exercising his rights." Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000).

[11] The crucial third element, causation, requires a plaintiff to prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. See Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007); Krouse v. American Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir. 1997)).

[12] A prisoner's ability to file grievances and lawsuits against prison officials is a protected activity for purposes of a retaliation claim. See Milhouse v. Carlson, 652 F.2d 371, 373-74 (3d Cir. 1981) (retaliation for exercising right to petition for redress of grievances states a cause of action for damages arising under the constitution); Woods v. Smith, 60 F.3d 1161, 1165 (5th Cir. 1995) (prison officials may not retaliate against an inmate for complaining about a guard's misconduct). Defendants argue, however, that Plaintiff did not engage in a protected activity because the grievance for which he claims he was retaliated was based on a lie that he did not receive the copies. Defendants argue that a prisoner does not have a First Amendment right to lie or use speech that is otherwise punishable because it jeopardizes prison security or safety and that such speech does not become constitutionally protected merely because it appears in a grievance. See Hale v. Scott, 371 F.3d 917, 919 (7th Cir. 2004) (collecting authorities confirming that inmates have no constitutional right to make false accusations about prison personnel); Hadden v. Howard, 713 F.2d 1003, 1006-07 (3d Cir. 1983) (discussing at length that inmates

filing a grievance, and that the grievance in question was the substantial or motivating factor for searching his cell property, Plaintiff's retaliation claim still fails because Defendants have demonstrated by a preponderance of the evidence that the search was conducted for legitimate penological reasons. Specifically, the record establishes that Defendants Zirkle and House had reason to believe that Plaintiff lied in his grievance and was falsely accusing staff of misconduct, which is a violation of DOC policy. *See*, *e.g.*, Alexander v. Fritch, 2010 WL 1257709, at *12 (W.D. Pa. Mar. 26, 2010). They conducted the property search for investigative purposes in order to find the receipt or copies, which could confirm their suspensions that Plaintiff was lying. (Exh. 2 at ¶ 5; Exh. 3 at ¶ 5.) As Defendants note, it is ironic that Plaintiff filed a grievance accusing others of misconduct then subsequently complained that the investigation, including the search of his property, was "retaliatory" and "unnecessary." The undersigned concludes that, based on the evidence in the record, no reasonable factfinder could conclude that the search was not conducted for legitimate penological reasons. As such, Defendants should be granted summary judgment on this claim.

## III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants' Motion for Summary Judgment (ECF No. 32) be granted on the ground that Plaintiff has failed to exhaust his administrative remedies with respect to each of his claims. Alternatively, Defendants'

---

have no right to lie about prison personnel in documents submitted through Pennsylvania's inmate complaint process); Williams v. Klem, 2008 WL 4453100, at *4 (M.D. Pa. Sept. 30, 2008); Floyd v. Klem, 2008 WL 3914830, at *7-8 (M.D. Pa. Aug. 20, 2008); Brightwell v. Lehman, 2007 WL 2479682, at *6 (W.D. Pa. Aug. 29, 2007).

While the undersigned agrees that Plaintiff has no constitutionally protected right to file a false grievance, Defendants do not submit any direct evidence that Plaintiff was in fact lying and Defendants Zirkle and House readily admit that during the search of Plaintiff's cell they were unable to find the missing receipt or copies. Nevertheless, the determination of whether the filing of the grievance at issue was constitutionally protected conduct is unnecessary to the resolution of this claim for the reasons that follow.

Motion should be granted on Plaintiff's retaliation claim to the extent Plaintiff exhausted his administrative remedies with respect to such claim.

In accordance with the Magistrate Judge's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule of Court 72.D.2, the parties are allowed fourteen (14) days from the date of service to file objections to this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections will constitute a waiver of any appellate rights.

Dated: December 21, 2012

/s/ Lisa Pupo Lenihan
Lisa Pupo Lenihan
Chief United States Magistrate Judge

cc: Carl Lane
AS-1293
SCI-Houtzdale
PO Box 1000
Houtzdale, PA  16698
*Via U.S. Mail*

Counsel of Record
*Via ECF Electronic Mail*